LAKOTA LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee,

v.

BRICKNER, Appellant.

[Cite as *Lakota Loc. School Dist. Bd. of Edn.*
*v. Brickner* (1996), 108 Ohio App.3d 637.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–95–022.

Decided Jan. 19, 1996.

638

*James L. Schuller,* for appellee.

*Russell R. Miller* and *Marshall W. Guerin,* for appellant.

MELVIN L. RESNICK, Presiding Judge.

This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, which granted the summary judgment motion of appellees, the Lakota Local School District Board of Education and its individual members, Ronald Billow, J. William Zimmerman, James Parsons, David Stroud, and Harold Biddle, and the Superintendent of the Lakota School District, Robert A. Ludwig. Appellant, Catherine A. Brickner, appeals that judgment and sets forth the following assignments of error:

"The trial court erred to the prejudice of the appellant when it granted summary judgment upon the breach of contract cause of action in favor of appellees."

"The trial court erred to the prejudice of the appellant when it granted summary judgment upon the breach of a duty of good faith cause of action in favor of appellees."

"The trial court erred to the prejudice of the appellant when it granted summary judgment upon the defamation cause of action in favor of appellees."

"The trial court erred to the prejudice of the appellant when it granted summary judgment upon the intentional infliction of emotional distress cause of action in favor of appellees."

Appellant was appointed the treasurer of the Lakota Local School District on December 12, 1991 and provided with a written contract of employment commencing on January 1, 1992. In October 1993, the board voted not to renew her appointment. However, the board failed to comply with the statutory notification requirements of R.C. 3313.22, thereby voiding this decision.

On March 11, 1994, the board terminated, by resolution, appellant's employment as treasurer, for cause. The resolution contained a list enumerating the reasons for the termination. These included (1) insubordination, (2) unprofessional behavior in her relationship with the board and other board employees, and (3) actions in her official capacity that were inefficient and/or incompetent and/or displayed poor professional judgment.

On April 4, 1994, appellant gave a letter, captioned "Notice of Appeal from Board of Education Determination Terminating Catherine A. Brickner for Cause," to one of the board members. The letter stated that, pursuant to R.C. Chapter 2506, it served as a notice of the appeal from the March 11, 1994 decision of the board to the Wood County Court of Common Pleas. Subsequently, on May 12, 1994, the board filed a complaint asking the common pleas court to declare that appellant's appeal of the termination was ineffective or, in the alternative, to affirm the termination for cause.

On April 7, 1994, appellant filed a complaint in the Wood County Court of Common Pleas in which the board, the individual members of the board and the superintendent of the Lakota School District were named as defendants. The complaint set forth the following causes of action: (1) breach of contract, (2) breach of good faith, (3) defamation, and (4) intentional infliction of emotional distress.

On November 18, 1994, appellees filed a motion for summary judgment in the civil action. They argued that appellant's administrative appeal offered a plenary remedy to appellant and preempted her contract claim. Therefore, the contract claim was duplicative and should be dismissed. Appellees further contended that no cause of action exists in Ohio for breach of good faith in the employment context. Finally, they maintained that no genuine issue of material fact existed on appellant's claims of defamation and intentional infliction of emotional distress. Appellant filed a memorandum in opposition to the motion for summary judgment.

On March 10, 1995, the trial court consolidated appellant's civil action and her administrative appeal. On that same date, the court also granted appellees' motion for summary judgment on all claims raised in the civil action. The court found, as a matter of law, that appellant's breach of contract claim was duplicative of her administrative appeal and dismissed that claim. The court further concluded, as a matter of law, that "Ohio does not recognize a tort cause of action based upon a covenant of good faith and fair dealing in the employment context." The court, therefore, dismissed this claim. In addition, the trial court determined that appellant had failed to offer evidence sufficient to create a genuine issue of material fact on her claims of defamation and intentional infliction of emotional distress and granted appellees' motion for summary judgment on these claims.

On March 13, 1995, appellant filed a notice of appeal from the judgment dismissing her civil action. Finally, on March 14, 1995, appellant filed a voluntary dismissal, without prejudice, of her administrative appeal.

The legal standard applicable in this case is found in Civ.R. 56(C), which reads, in part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary

judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Summary judgment is a method for promptly disposing of legal claims which have no factual foundation. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–2555, 91 L.Ed.2d 265, 276. The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist. *Fuller v. German Motor Sales, Inc.* (1988), 51 Ohio App.3d 101, 103, 554 N.E.2d 139, 141–142.

The party moving for summary judgment is required to "specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Once the moving party sets forth specific reasons for summary judgment, the nonmoving party bears a reciprocal burden to produce evidence on any element essential to his case for which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274.

We note at the outset that the trial court did not consider some of the issues raised by appellees' motion for summary judgment and the memorandum in opposition. Generally, appellate courts do not address issues which the trial court declined to consider. *Oakwood v. Clark Oil & Refining Corp.* (1986), 33 Ohio App.3d 180, 183–184, 515 N.E.2d 1, 4–5. In *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 89, 585 N.E.2d 384, 389–390, the Supreme Court of Ohio specifically noted that where the trial court declined to consider one of the arguments raised in a motion for summary judgment but granted the motion for summary judgment solely on the basis of a second argument, the first argument was not properly before the court of appeals. Accordingly, we will not address those aspects of this case that were not considered by the trial court in reaching its decision.

In her first assignment of error, appellant contends that the trial court erred in granting appellees' motion for summary judgment as a matter of law on her breach of contract claim. She first asserts that her contract claim is not duplicative of her administrative appeal, because its dismissal deprives her of her right to a jury trial under Civ.R. 38. In the alternative, appellant argues that her contract action was filed first; therefore, the trial court should have dismissed her administrative appeal. In addition, appellant maintains that an administrative appeal of her termination is not an exclusive remedy. Thus, appellant concludes that, in finding that the common-law action was duplicative of the administrative appeal, the trial court erred to appellant's prejudice.

We began our analysis with an examination of appellant's right to a statutory remedy, if any.

R.C. 3313.22 provides, in part:

"Except as otherwise provided in division (E) of section 3311.19 of the Revised Code, the board of education of each city, local, exempted village, and joint vocational school district at an organizational meeting shall elect a treasurer who may not be a member of the board or otherwise regularly employed by the board. No board of education, other than the board of an island school district, shall elect a person treasurer who does not hold a valid license issued under section 3301.074 of the Revised Code.

"The treasurer shall initially serve for a two-year probationary term and thereafter, if reappointed, shall serve for a four-year term. *Such treasurer may be removed at any time for cause by a two-thirds vote of the entire board.* If the treasurer fails to maintain a valid license, he shall be removed by the board.

"If the treasurer is reappointed as provided in this section, the board shall execute a written contract of employment for an initial four-year term and each four-year term thereafter. A board of education that does not intend to reappoint its treasurer, either after the treasurer's probationary term or after a four-year term, shall give such treasurer written notification of the board's intention not later than the first regularly scheduled board meeting of October. If the board does not give such notice by the specified date, the treasurer is considered reemployed for a four-year term at a salary determined by the board at its first organizational meeting in January." (Emphasis added.)

In order for a decision of an administrative body to be appealable pursuant to R.C. Chapter 2506 it must be a final resolution rendered in a quasi-judicial proceeding. *State ex rel. McArthur v. DeSouza* (1992), 65 Ohio St.3d 25, 27, 599 N.E.2d 268, 269–270; *M.J. Kelley Co. v. Cleveland.* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562, paragraph one of the syllabus. The earmarks of a quasi-judicial proceeding include a requirement, imposed by law, of notice, a hearing and an opportunity to introduce evidence. *State ex rel. McArthur v. DeSouza*, 65 Ohio St.3d at 27, 599 N.E.2d at 269–270, citing *Kelley* at paragraph two of the syllabus. As noted in *In re Appeal of Howard* (1991), 73 Ohio App.3d 717, 719–720, 598 N.E.2d 165, 166:

"[T]he question [in determining whether an act of an administrative body is quasi-judicial] is whether there is a requirement for notice and hearing, not whether the administrative agency complied with such requirement. The question is one of law not of fact. An administrative agency's giving notice, conducting a hearing and allowing evidence to be presented does not create a right of

appeal under R.C. 2506.01 where the proceedings are not quasi-judicial in nature requiring notice, hearing and the opportunity for introduction of evidence."

In the present case, the statute governing the action of a school board in terminating its treasurer for cause grants the board the power to do so "at any time." The statute does not impose any requirement of notice, a hearing or an opportunity to introduce evidence. Therefore, despite the fact that at least two other appellate courts have considered the administrative appeal of a treasurer's termination for cause, see *Scott v. Bd. of Edn. of Cuyahoga Valley Joint Vocational School Dist.* (Aug. 31, 1995), Cuyahoga App. No. 68331, unreported, 1995 WL 517038; *Jones v. New Miami Loc. School Dist. Bd. of Edn.* (Nov. 12, 1985), Butler App. No. CA84–11–130, unreported, 1985 WL 11085, we are of the opinion that the common pleas court lacked the jurisdiction to consider an appeal of the board's decision.[1] See *Prosen v. Dimora* (1992), 79 Ohio App.3d 120, 125, 606 N.E.2d 1050, 1053.

Thus, the only remedies available to appellant were common-law remedies including breach of the contract that, by law, the board was required to execute. Because the breach of contract action was not duplicative of any administrative remedy, the trial court erred, as a matter of law, in granting summary judgment to appellees on this count of appellant's complaint. Accordingly, appellant's first assignment of error is found well taken.

In her second assignment of error, appellant asserts that the trial court erred in finding that, in Ohio, no cause of action for breach of good faith exists in the employment context. Specifically, appellant argues that this claim is not based upon tort as stated by the trial court. Rather, she maintains that this claim is one sounding in contract and arises from the duty of the parties to act in good faith and deal fairly when entering into a written employment contract.

Appellant relies on two appellate decisions to support her conclusion. See *Brown v. Otto C. Epp Mem. Hosp.* (1987), 41 Ohio App.3d 198, 535 N.E.2d 325; *Bolling v. Clevepak* (1984), 20 Ohio App.3d 113, 20 OBR 146, 484 N.E.2d 1367.

In reading appellant's complaint and memorandum in opposition to the motion for summary judgment, it appears that her second cause of action was rooted in

---

1. Even if this court espoused the idea that the actual rather than the legal provision of notice, hearing and an opportunity to be heard was sufficient to satisfy the mandates of *M.J. Kelley*, such procedures were not provided by the board in the instant case. Appellant was afforded written notice of the grounds for her termination and a pretermination hearing. However, she was specifically advised that this hearing would not include the examination or cross-examination of witnesses, *i.e.*, the opportunity to present evidence. The minutes of the meeting of the board on March 11, 1994 also fail to indicate that appellant was provided with an opportunity to present evidence. Accordingly, under either standard, the decision of the board was not reached by means of a quasi-judicial proceeding.

tort, not contract. Thus, the trial court did not err when it granted, as a matter of law, appellees' motion for summary judgment on this count of appellant's complaint. See *Brandenburger v. Hilti, Inc.* (1989), 52 Ohio App.3d 21, 26, 556 N.E.2d 212, 217–218 ("a [tort] cause of action for breach of good faith exists only in the context of an insurance contract").

Nevertheless, because she did cite *Brown* and *Bolling* in her memorandum in opposition to the motion for summary judgment, we shall address the question of whether a separate cause of action for breach of good faith exists in Ohio as a contract claim.

In *Brown, supra,* 41 Ohio App.3d 198, 535 N.E.2d 325, an appeal from a judgment notwithstanding the verdict, the Hamilton County Court of Appeals determined that an implied contract of employment existed between a nursing assistant and her employer, a hospital. The appellate court then applied the "standard of good faith required of parties to any contract" to ascertain whether the evidence offered at trial was sufficient to permit the jury to reasonably conclude that the hospital had complied with the terms of the contract.

In *Bolling, supra,* 20 Ohio App.3d 113, 20 OBR 146, 484 N.E.2d 1367, this court was required to construe the written severance provisions of an employment contract. In construing these provisions, this court was "mindful of two salutary rules of construction, both of which have special force in the context of employment manuals." *Id.* at 121, 20 OBR at 153–154, 484 N.E.2d at 1376. The second of these rules of construction is the fact that the parties to a contract "are bound toward one another by standards of good faith and fair dealing." *Id.* We explained that any construction placed upon a contract drafted by an employer would be that it was drafted in good faith rather than with fraudulent intent. *Id.* at 122, 20 OBR at 154–155, 484 N.E.2d at 1376.

As can be readily discerned, neither *Brown* nor *Bolling* stands for the proposition that a breach of good faith exists as a separate cause of action from a breach of contract claim. Instead, they recognize the fact that good faith is part of a contract claim and does not stand alone. For this reason, appellant's second assignment of error is found not well taken.

In her third assignment of error, appellant contends that material questions of fact exist on her defamation claim.

The undisputed facts relevant to our disposition of this assignment of error are as follows.

As the treasurer of the Lakota School District, appellant was required to prepare an annual budget and present it to the board for its approval. At the January 1994 meeting of the board, appellant offered the proposed budget for the fiscal school year, July 1, 1994 to June 30, 1995. At the same meeting,

Superintendent Ludwig, who had performed his own budget calculations, stated that there was a discrepancy of about $500,000 between appellant's ending balance and his ending balance. The board adopted appellant's budget at the January meeting, but asked an expert to study the figures submitted by the superintendent and the treasurer in order to determine the cause of the discrepancy. It is uncontradicted that this was a public meeting and that the difference in budget balances was reported by the media.

As an employee of a school district, appellant contributed to the School Employees Retirement System ("SERS"). Although it was not part of her original contract, on May 21, 1993, the board agreed, in writing, to reimburse appellant for any amounts she paid into SERS in 1992 and 1993 and to pay her share of SERS from May 1, 1993 forward. In August 1993, Superintendent Ludwig was in a management team meeting with school principals and the state/federal programs coordinator. Appellant came into the meeting to ask Superintendent Ludwig to contact an individual in the Ohio Department of Education. At that time, she indicated to the superintendent that the board might not be able to raise salaries for personnel employed by the Lakota School District. Superintendent Ludwig responded by saying either "Does this include the raise you gave yourself?" or "Well, does that include your SERS that you gave yourself?" Both parties agree, however, that the superintendent's question related to the payment of appellant's share to SERS by the board.

Appellant asserts that the trial court erred in granting appellees' motion for summary judgment on the basis of qualified privilege and the lack of evidence on the element of actual malice.

 Defamation is the unprivileged publication of a false and defamatory matter about another. *McCartney v. Oblates of St. Francis deSales* (1992), 80 Ohio App.3d 345, 353, 609 N.E.2d 216, 221–222. A defamatory statement is one that tends to cause injury to a person's reputation or, among other things, exposes him to public ridicule or shame or affects him adversely in his trade or business. *Id.*

 Even in a case where a plaintiff has established a *prima facie* case of defamation, a defendant may invoke the defense of conditional or qualified privilege. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1289–1290; *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 137–138, 331 N.E.2d 713, 718. In a case where it is found that a conditional or qualified privilege does exist, the burden is on the plaintiff to demonstrate, by clear and convincing evidence, that the defamatory statements were made with "actual malice."

*Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus.

Where the circumstances of the occasion for the alleged defamatory statement are not in dispute, the determination of whether there is a qualified privilege is a question of law for the trial court. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr.,* 73 Ohio St.3d at 7, 651 N.E.2d at 1289–1290; *McCartney v. Oblates of St. Francis deSales,* 80 Ohio App.3d at 353, 609 N.E.2d at 221–222. As stated in *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr.,* 73 Ohio St.3d at 8, 651 N.E.2d at 1290, quoting *Hahn, supra,* 43 Ohio St.2d at 244, 72 O.O.2d at 138–139, 331 N.E.2d at 718–719:

" 'A publication is privileged when it is fairly made by a person in the discharge of some public duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.' "

The *Hahn* court further explained this standard by stating:

" 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation.' " *Hahn v. Kotten,* 43 Ohio St.2d at 245–246, 72 O.O.2d at 139, 331 N.E.2d at 719–720, quoting 33 American Jurisprudence (1941) 124, Libel and Slander, Section 126.

In the case before us, there is no dispute as to the occasions upon which the alleged defamatory remarks were made or any dispute as to the content of those statements. In the first instance, Superintendent Ludwig provided statements in a board meeting that implied that appellant's proposed budget was in error. In the second incident, Superintendent Ludwig, in a school-related meeting and in response to a statement related to increasing school personnel salaries, essentially posed the question as to whether appellant had given herself a raise. Thus, the determination of the existence of qualified privilege was a matter of law for the trial court.

Although the trial court did not address the question of whether the statements made by Superintendent Ludwig were defamatory, we shall assume for the

purpose of this appeal that they are false and that they exposed her to public shame as well as adversely affecting her trade or business.

Our review of the evidence before the trial court on the issue of qualified privilege discloses that on both occasions, the superintendent's remarks were made pursuant to his duty to provide a good education to the children in the Lakota school system and were, therefore, made in order to further a common interest in the financial future and resulting educational programs of the Lakota School District. Accordingly, appellant was required to offer evidence sufficient to create a question of fact on the issue of whether the communications made by Superintendent Ludwig were made with actual malice.

Statements are made with "actual malice" when they are made with knowledge that they are false or with reckless disregard as to their truth or falsity. *Jacobs v. Frank*, 60 Ohio St.3d at 116, 573 N.E.2d at 614. Thus, there must be a showing that the false statements were made with a high degree of awareness of their probable falsity. *Id.* at 118, 573 N.E.2d at 615–616. Further, the alleged defamatory statements must be viewed with regard to the subjective belief of the author. *Id.* at 119, 573 N.E.2d at 616–617.

In applying this standard to the statement made concerning an alleged $500,000 error in appellant's budget, appellant failed to offer any evidence to create a genuine issue of material fact as to whether Superintendent Ludwig made this statement with a high degree of awareness of its probable falsity. In fact, the expert who examined both appellant's and the superintendent's budget calculations found errors in both. Therefore, even though he concluded that appellant's ending balance was closer to his own projections, it could not be inferred from the expert's opinions that a question of fact existed on the issue of whether Superintendent Ludwig made this statement with actual malice.

However, a genuine issue of material fact exists with regard to whether the statement implying that appellant impermissibly gave herself a raise was made with actual malice. By statute, only the board can determine appellant's salary, including any raises. The evidence offered by appellant demonstrated that she did not receive a raise in 1993. Instead, the board agreed, in writing, to pay appellant's share of SERS. In his deposition, Superintendent Ludwig discussed appellant's failure to order $2,500 worth of janitorial supplies. During this discussion, he revealed that he was fully aware of the fact that the payment of the SERS was not a raise. He stated: "This was the same period [1993] that she processed the paperwork which resulted in her realizing back pay of one year of SERS money, plus catching up for her SERS money for that fiscal year * * *." At the very least, this evidence creates a genuine issue of material fact as to whether the superintendent was aware of a high probability of the falsity of

his statement. Accordingly, the trial court erred in granting appellees' motion for summary judgment as a matter of law on this aspect of appellant's defamation claim.

Appellant's third assignment of error is found not well taken in part and well taken in part.

In her fourth and final assignment of error, appellant argues that the trial court erred in finding that there was no genuine issue of material fact as to the elements of her intentional infliction of emotional distress claim.

In a case based on intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.* (1994), 71 Ohio St.3d 408, 644 N.E.2d 286. Appellant sets forth numerous instances in her appellate brief which she maintains are examples of extreme and outrageous conduct on the part of appellees that was intended to cause her emotional distress. Notably, based on the facts offered, all of the alleged tortious conduct involves either criticism of appellant's work performance or adjustments in her job duties. In short, a review of the record discloses that appellant failed to offer operative facts sufficient to create a material question of fact on the element of whether this conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 375, 6 OBR 421, 426, 453 N.E.2d 666, 671. Accordingly, the trial court did not err in granting appellees' motion for summary judgment on appellant's claim of intentional infliction of emotional distress.

Appellant's fourth assignment of error is found not well taken.

The judgment of the Wood County Court of Common Pleas is reversed in part and affirmed in part. This cause is remanded to that court for proceedings on appellant's breach of contract claim and her defamation claim as it relates to the statement made by Superintendent Ludwig during the management team meeting. Costs of this appeal are to be split equally between appellant and appellees.

*Judgment affirmed in part*
*and reversed in part.*

ABOOD and SHERCK, JJ., concur.