OPINION *Page 2 
{¶ 1} Plaintiff Michael J. Dixon appeals a summary judgment of the Court of Common Pleas of Licking County, Ohio, which dismissed all of his claims and found in favor of defendants-appellees on their breach of contract counterclaim. Appellant assigns ten errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON ALL CAUSES OF ACTION ASSERTED BY APPELLANT IN THIS ACTION BECAUSE THE RELEASE RELIED UPON BY THE TRIAL COURT TO PRECLUDE APPELLANT'S CAUSES OF ACTION WAS NOT ENFORCEABLE AGAINST APPELLANT, THE RELEASE DOES NOT PRECLUDE APPELLANT FROM ASSERTING CAUSES OF ACTION AGAINST APPELLEES FOR VIOLATING THE AGREEMENT CONTAINING THE RELEASE OR ACTS THAT OCCURRED AFTER SAID AGREEMENT WAS EXECUTED, AND THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE RELEASE WAS ENFORCEABLE AGAINST APPELLANT.
 {¶ 3} "II. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEE BOARD AND AGAINST APPELLANT ON APPELLANT'S CAUSE OF ACTION FOR WRONGFUL TERMINATION BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER APPELLANT VOLUNTARILY RESIGNED HIS EMPLOYMENT WITH APPELLEE BOARD. *Page 3 
 {¶ 4} "III. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEE BOARD AND AGAINST APPELLANT ON APPELLANT'S CAUSE OF ACTION FOR BREACH OF CONTRACT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER APPELLEE BOARD BREACHED THE TERMS AND CONDITIONS OF AN AGREEMENT ENTERED INTO BY AND BETWEEN APPELLANT AND APPELLEE BOARD, WHETHER ANY SUCH BREACHES WERE MATERIAL, AND WHETHER ANY SUCH BREACHES WERE OF ESSENTIAL TERMS OF THE AGREEMENT.
 {¶ 5} "IV. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON APPELLANT'S CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER APPELLANT WAS OBLIGATED TO TENDER ANY CONSIDERATION THAT HE RECEIVED FROM APPELLEE BOARD BEFORE BRINGING THE CAUSE OF ACTION AND WHETHER APPELLANT DEMONSTRATED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT THAT MISREPRESENTATIONS WERE MADE TO APPELLANT OR THAT HE RELIED ON THEM TO HIS DETRIMENT.
 {¶ 6} "V. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON APPELLANT'S CAUSES OF ACTION FOR LIBEL AND SLANDER BECAUSE APPELLEE PIAR MADE FALSE AND DEFAMATORY STATEMENTS ABOUT PLAINTIFF AND APPELLANT DEMONSTRATED THAT THERE WERE GENUINE *Page 4 
ISSUES OF MATERIAL FACT AS TO WHETHER APPELLEE PIAR MADE THE STATEMENTS WITH ACTUAL MALICE.
 {¶ 7} "VI. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON APPELLANT'S CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES BECAUSE APPELLANT DEMONSTRATED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER APPELLANT HAD VALID BUSINESS EXPECTANCIES, WHETHER APPELLEES HAD KNOWLEDGE OF APPELLANT'S VALID BUSINESS EXPECTANCIES, WHETHER APPELLEES INTENTIONALLY INTERFERED WITH APPELLANT'S VALID BUSINESS EXPECTANCIES, WHETHER APPELLEES (SIC) INTERFERENCE WITH APPELLANT'S VALID BUSINESS EXPECTANCIES CAUSED A BREACH OR TERMINATION FO (SIC) THOSE VALID BUSINESS EXPECTANCIES, AND WHETHER APPELLANT HAS BEEN DAMAGED AS A RESULT OF THE BREACH OR TERMINATION OF HIS VALID BUSINESS EXPECTANCIES.
 {¶ 8} "VII. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON APPELLANT'S CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE APPELLANT DEMONSTRATED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER APPELLEES' MALICIOUS CONDUCT TOWARD APPELLANT GOES WELL BEYOND ALL POSSIBLE BOUNDS OF DECENCY AND CAN BE REGARDED AS UTTERLY INTOLERABLE IN A CIVILIZED SOCIETY. *Page 5 
 {¶ 9} "VIII. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON APPELLANT'S CAUSE OF ACTION FOR CIVIL CONSPIRACY BECAUSE APPELLANT DEMONSTRATED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER APPELLEES MALICIOUSLY COMBINED FOR THE PURPOSE OF UNLAWFULLY INJURING APPELLANT AND TERMINATING HIS EMPLOYMENT WITH APPELLEE BOARD AND RUINING HIS PROFESSIONAL REPUTATION.
 {¶ 10} "IX. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON APPELLEES' COUNTERCLAIM FOR BREACH OF CONTRACT BECAUSE APPELLANT DEMONSTRATED THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE RELEASE THAT APPELLANT ALLEGEDLY BREACHED WAS ENFORCEABLE AGAINST APPELLANT OR, IF IT WERE ENFORCEABLE, WHETHER APPELLANT HAS BREACHED THE RELEASE BY COMMENCING THIS ACTION.
 {¶ 11} "X. THE TRIAL COURT ERRED BY RENDERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST APPELLANT ON APPELLANT'S CAUSE OF ACTION FOR WRONGFUL TERMINATION BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER APPELLANT VOLUNTARILY RESIGNED HIS EMPLOYMENT WITH APPELLEE BOARD." *Page 6 
 {¶ 12} Appellant is the former principal of Northridge High School. Defendants-appellees are the Northridge Local School District Board of Education, the individual Board Members J. Robert Brooks, Jimmy L. McCrummen, Fred C. Grube, Ann E. Cox, and Janine C. Shipley. Other defendants-appellees are Jacklyn L. Piar, the Superintendent of schools at the time the alleged tort occurred; Angela Pollock, an Assistant Principal; and Shawn Wilkoski, a Technical Aide and Game Day Coordinator. Appellant was hired in May, 2002, under a three year contract. In January, 2005, Piar recommended the Board offer appellant a one-year probationary contract. Appellant refused to accept the recommendation, believing pursuant to R.C. 3319.02, he was entitled to a two-year contract extension because Piar had not given him a written evaluation during the 2002-03 school year.
 {¶ 13} Early in February 2005, Piar became aware some staff felt appellant intimidated and bullied them. Pollock reported to Piar she felt continually harassed.
 {¶ 14} At the February, 2005 Board meeting, Pollock told the Board about her concerns, and also indicated she was concerned appellant was improperly handling money collected for admission to certain Northridge athletic events. Pollock informed the Board appellant refused to hand out tickets stubs to patrons. Pollock alleged appellant had directed her to put the gate receipt money, approximately $100 each time, in an envelope and to place the envelope in appellant's desk drawer. Pollock informed the Board appellant bought Christmas presents with the money and paid sheriffs deputies extra money for working the games.
 {¶ 15} On February 14, 2005, Piar and Brooks presented appellant with a letter placing him on administrative leave. Piar informed appellant if he chose to resign rather *Page 7 
than face termination proceedings, the Board would pay his salary and benefits for the remainder of the contract, which expired on June 30, 2005.
 {¶ 16} On February 15, 2005, appellant and his attorney met with Piar, Grube, and the Board's Treasurer. Appellant signed an agreement, which his counsel had assisted in drafting. The agreement provided appellant would be placed on paid administrative leave for the remainder of his contract, and in return, appellant and the Board mutually agreed to discharge each other from any and all liability relating to appellant's employment. The agreement provided appellant with a seven-day period in which he could rescind the agreement. At the February 15th meeting, appellant agreed to hand write a letter of resignation, and he did so.
 {¶ 17} On February 22, 2005, appellant signed an amended agreement in which he again tendered his resignation and the Board agreed to continue paying him through July 31, 2005. Appellant's attorney helped draft the document, and appellant signed the amended agreement in his attorney's office with only the two of them present. Appellant also submitted another letter of resignation.
 {¶ 18} Thereafter, the Board received numerous public records requests for appellant's personnel file. Piar testified after consulting with the legal counsel, she provided only the materials required by statute.
 {¶ 19} Following appellant's resignation, Piar received two phone calls from potential employers. Piar testified she limited her comments to the language agreed upon by the parties in the amended agreement. Neither potential employer offered appellant an employment contract. *Page 8 
 {¶ 20} On July 22, 2005, appellant filed his first complaint against the Board and Piar, later amending his complaint on October 2, 2006, to add the individual Board members, Pollock, and Wilkoski.
 {¶ 21} Appellant's causes of action against the Board were for wrongful termination, breach of contract, fraud in the inducement, libel and slander, and civil conspiracy.
 {¶ 22} Appellant's causes of action against the individual appellees were for tortious interference with business expectancy, libel and slander, intentional and negligent infliction of emotional distress, and civil conspiracy.
 {¶ 23} All defendants filed counterclaims for breach of contract. In addition, the Board counterclaimed for unjust enrichment, arguing appellant should not retain the salary and benefits it paid pursuant to the agreement. The individual Board members, Pollock, and Wilkoski also counterclaimed for intentional infliction of emotional distress and abuse of process.
 Standard of Review {¶ 24} Civ. R. 56 states in pertinent part:
 {¶ 25} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable *Page 9 
minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 {¶ 26} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts,Houndshell v. American States Insurance Company (1981),67 Ohio St. 2d 427. The court may not resolve ambiguities in the evidence presented,Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio,Inc. (1984), 15 Ohio St. 3d 321. A fact is material if it affects the outcome of the case under the applicable substantive law, Russell v.Interim Personnel, Inc. (1999), 135 Ohio App. 3d 301.
 {¶ 27} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St. 3d 35. This means we review the matter de novo, Doe v. Shaffer, 90 Ohio St.3d 388,2000-Ohio-186.
 {¶ 28} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim,Drescher v. Burt (1996), 75 Ohio St. 3d 280. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The *Page 10 
non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, Henkle v. Henkle (1991),75 Ohio App. 3d 732.
 I. {¶ 29} In his first assignment of error, appellant argues the court should not have granted summary judgment based on the releases contained in the agreement and amended agreement, because the releases do not preclude him from bringing an action based on appellees' actions occurring after the agreement was executed. Appellant also argues there are genuine issues of material fact as to whether the releases are enforceable against him.
 {¶ 30} The releases state on behalf of themselves, their heirs, executors, administrators and assigns, the parties release and discharge each other, their heirs, executors, administrators, agents, successors and assigns, for any and all liability claims, demands, controversies, damages, actions, and causes of action of any kind in any way related to the employment contract between the parties and to appellant's resignation.
 {¶ 31} Appellant argues the Board obtained the releases by fraud in the inducement, which is specifically addressed in his assignment of error IV infra.
 {¶ 32} The trial court found a release that memorializes settlement terms is a contract, and a person who reads, understands, and signs the contract in exchange for valid consideration is bound by its terms, Opinion of the trial court at 5, citing Connelly v. United States SteelCompany (1954), 161 Ohio St. 448. The trial court found a release of a cause of action for damages is a bar to a later action on any claim encompassed *Page 11 
within a release. A party seeking to avoid the bar to a later action must allege the release was obtained by fraud, and must tender back the consideration for the release, Id. citing Haller v. BorrorCorporation (1990), 50 Ohio St. 3d 10.
 {¶ 33} The trial court found appellant received good and valuable consideration in the form of his salary and benefits, as consideration for signing the agreements. The court noted appellant was represented by counsel, who was present when he signed the agreement and the amended agreement. The court also found appellant's counsel actually assisted in preparing the agreements and concluded the agreements are valid and enforceable agreements. The court found appellant was precluded from bringing the action because every claim he brought against the appellees relates to his employment and resignation,
 {¶ 34} The trial court's approach is too simplistic. The agreements set out certain responsibilities for the appellees, such as the clauses pertaining to confidentiality and information to be given to potential employers, and the appellees had a duty to act in good faith. The agreements obviously do not bar appellant from bringing an action alleging after the agreements were executed, appellees did not fulfill their obligations pursuant to the agreements. But if appellees committed a material breach of the agreements, appellant would be excused from his own contractual responsibilities, and only then his claims for alleged torts occurring prior to the agreements would not be barred by the release he signed.
 {¶ 35} Appellant cited Software Clearing House, Inc. v. Intrak,Inc. (1990), 66 Ohio App. 3d 163 to the trial court and to this court.Intrak stands for the proposition if one party to a contract breaches an essential term of the contract, the breach *Page 12 
discharges the obligations of the other parties to the contract. Although the trial court here found Intrak was not applicable to this case, the court did discuss it.
 {¶ 36} Intrak sets out five factors to be considered in determining whether a party has violated an essential term of an agreement: (1) the extent to which the injured party will be deprived of the benefit of the bargain; (2) the extent to which the injured party can be compensated for the lost benefit; (3) the extent to which the breaching party suffers a forfeiture; (4) the likelihood that the breaching party can cure its breach under the circumstances; and (5) the extent to which the breaching party has acted in good faith and has dealt fairly with the injured party, Intrak at 170-171.
 {¶ 37} The trial court here found there was no genuine issue of material fact, and the appellees did not breach the agreement, or did not breach a material or essential term of the agreement, and cured any non-material breach they may have committed. The court concluded even under the Intrak analysis, appellant could not prevail.
 {¶ 38} The agreement the parties entered into on February 15, 2005, states in pertinent part:
 {¶ 39} "6. The parties agree that this agreement shall be confidential to the extent permitted under Ohio law and further agree that this agreement will be maintained in the files of the Board's legal counsel. Both parties agree that this matter shall be confidential and further agree that neither will discuss the events leading up to Dixon's resignation with any other individual, except legal counsel. * * *"
 {¶ 40} Specifically, appellant claimed appellees breached the agreement and amended agreement when they disclosed his personnel file to persons who filed public records requests. Appellant argues the Board created an additional file in order to *Page 13 
disseminate information about him to the public. Appellees respond when a public records request is made, the Board has no option but to provide the documents. Piar deposed she consulted with counsel before responding to the public records requests. Appellees argue they complied with the confidentiality provision of the agreements to the extent permitted by law.
 {¶ 41} The interpretation of a contract is a matter of law that we review de novo. Nationwide Mutual Fire Insurance Co. v. Guman BrothersFarm, 73 Ohio St. 3d 107, 108, 652 N.E.2d 684, 1995-Ohio-214. Our purpose in interpreting contracts is to ascertain and effectuate the intent of the parties, and we presume the intent of the parties is evidenced by the language they chose. Graham v. Drydock Coal Co.,76 Ohio St. 3d 311, 313, 1996-Ohio-393, 667 N.E. 2d 949. We must give ordinary words their ordinary meaning unless this results in "manifest absurdity", or unless the face or overall content of the contract evidences some other meaning. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus.
 {¶ 42} The language in the agreement indicates the parties anticipated there might be situations wherein Ohio law required disclosure of some information. In addition, the court could not enforce a clause in the agreement that violated state law. A contract containing an illegal clause will have it stricken from the contract, if possible, or the clause will render the entire contract void. Extine v. WilliamsonMidwest, Inc. (1964), 176 Ohio St. 403, 405, 27 O.O. 2d 375,200 N.E.2d 297. "Courts of law and courts of equity will decline to enforce obligations created by contract if the contract is illegal or the consideration given for it is illegal, immoral, or against public policy." Langer v. Langer (1997), 123 Ohio App. 3d 348, 354,704 N.E.2d 275. *Page 14 
 {¶ 43} Appellant's breach of contract arguments are addressed at greater length in his assignments of error III, and IX, infra.
 {¶ 44} The first assignment of error is overruled.
 II. {¶ 45} In his second assignment of error, appellant argues the court erred in finding there were no genuine issues of material fact as to whether he voluntarily resigned his employment. The trial court found appellant had voluntarily resigned. Appellant maintains his contract was automatically renewed prior to his resignation, and he did not resign voluntarily.
 {¶ 46} R.C. 3319.02 provides the principal of a school is deemed to be re-employed at the expiration of the current term of employment unless the principal notifies the Board in writing to the contrary on or before June 1, or unless, before March 31 of the year in which the contract expires, the Board either re-employs the principal or gives written notice of its intention not to re-employ him or her. The statute requires the superintendent to evaluate each principal at least once or twice a year, depending on the year the contract will expire, and if the superintendent fails to do so, the principal's contract is automatically renewed.
 {¶ 47} The trial court cited Starlin v. Morgan Local School DistrictBoard of Education (July 13, 1994), Morgan App. No. CA93-10, wherein this court held if a teacher resigns before the deadline for the school board's decision concerning re-employment, the principal has in effect removed his name from consideration for renewal, regardless of any action taken by the superintendent or school board prior to the resignation. *Page 15 
 {¶ 48} The facts in Starlin, supra, are somewhat similar to the case at bar. In Starlin, a teacher was accused of abusing a student. The superintendent and the school board allowed the teacher to resign and agreed to pay her salary through the end of her contract. When the teacher was cleared of criminal charges, she brought a claim for wrongful termination, arguing the superintendent had not given her the proper notice she would not be re-employed, and arguing she resigned under duress. The trial court found, and this court agreed, the facts demonstrated the teacher fully understood the circumstances and consequences of her resignation.
 {¶ 49} Here, the Board never gave appellant the formal notice it did not intend to renew his contract, and Piar did not do the appropriate evaluation. Citing Starlin, the trial court found when the appellant tendered his resignation and the Board accepted it, the Board and Piar's failure to comply with the statutory requirements was excused.
 {¶ 50} The court also found reasonable minds could not differ regarding whether appellant voluntarily resigned his position. The court noted appellant submitted his resignation four separate times: he signed the original agreement which included his resignation, hand-wrote a resignation and signed it, typed his hand-written resignation and signed it, and signed the amended agreement which included his resignation. Appellant was represented by counsel, who had assisted in drafting the agreements, and appellant deposed he resigned on the advice of his counsel. Our review of the record did not uncover any evidence appellant did not appreciate the circumstances and consequences of resigning from his employment. *Page 16 
 {¶ 51} We agree with the trial court there are no genuine issues of material fact and we find the trial court did not err in finding appellant could not prevail on his cause of action for wrongful termination.
 {¶ 52} The second assignment of error is overruled.
 III {¶ 53} In his third assignment of error, appellant argues there are genuine issues of material fact as to whether the Board breached the terms and conditions of the agreement and amended agreement.
 {¶ 54} The trial court found appellees had not breached the agreement or the amendment to the agreement, or if they had, the breach was minor and not sufficient to relieve appellant from his responsibility under the contract. The court found the essential purpose of the parties' agreement and the amendment to the agreement was for appellant to release his claims for future legal actions, in consideration for the continuance of his salary and benefits.
 {¶ 55} Appellant first takes issue with the court's statement there was no breach, or if there was, it was minor. Appellant argues either appellees breached the agreement or they did not, and for the court to find both demonstrates there must be genuine issues of material fact, making summary judgment inappropriate. Appellant further argues not only did the Board breach the agreement, but the breach was substantial and material to the essential terms of the agreement. Appellant asserts because the breaches occurred after the agreement and amended agreement were executed, the breaches were not covered by the agreements. *Page 17 
 {¶ 56} The trial court correctly set out the elements of breach of contract: (1) the existence of a contract; (2) plaintiffs performance of the contract; (3) defendant's non-performance of the contract without legal justification; and (4) damages suffered by the plaintiff, Trial Court's opinion at page 10, citing Phillips v. Spitzer ChevroletCompany, Stark App. No. 2006-CA-00002, 2006-Ohio-4701.
 {¶ 57} The first issue for the trial court was whether there was a substantial and material breach of the contract such that the contract's essential purpose was defeated. It is not inconsistent for the trial court to find there was, at most, a minor breach, not fatal to accomplishing the parties' essential purpose in entering into the contract.
 {¶ 58} The trial court's opinion sets out the alleged breaches. Appellant argued to the trial court the Board breached the agreement and amended agreement by publicly disclosing his resignation and the circumstances surrounding the resignation, not providing him with the personal effects he left in his office, failing to remove all information relating to the execution of the agreement from his personnel file, cancelling his wife's previously scheduled substitute teaching assignments, not permitting his daughter to work as an office aide, and providing information beyond dates of employment to potential employers.
 {¶ 59} The court found neither the agreement nor the amended agreement prevents the Board from disclosing to anyone the bare fact appellant resigned. Instead, it provides no party will discuss the events leading up to the resignation with any other individual, except for legal counsel. The court found appellees did not breach this provision by notifying parents appellant had resigned and another individual would be serving as Interim Principal. The court also found this did not interfere with appellant's *Page 18 
right to rescind the agreement within the given time period. While at one point in time, the Board had released a statement to the media that appellant was under internal investigation, the court found this was prior to his resignation, and thus covered by the agreement.
 {¶ 60} The court found the Board had not breached any part of the agreement based on cancellation of appellant's wife's scheduled substitute teaching assignments. Piar's uncontradicted testimony was she had instructed her secretary to contact appellant's wife if her services were required, and appellant's wife was compensated for the days which were cancelled. The court concluded appellant could not show any damages. Likewise, the court found appellant's daughter complained of not being permitted to work as an unpaid office aide for appellee Pollock, but she worked as an unpaid aide for another school employee after appellant resigned. Thus, the court concluded appellant could show no damages from this alleged breach.
 {¶ 61} Finally, appellant presented no evidence to support his allegation appellees provided information beyond the agreed-upon statement to potential employers. To the contrary, Piar testified she limited her comments to the language agreed upon by the parties. We cannot infer she revealed more information by the mere fact appellant was not hired by either potential employer who inquired about him.
 {¶ 62} We find the trial court was correct in determining appellant had come forward with no evidence there were material facts in genuine dispute. We conclude the trial court did not err in granting summary judgment on appellant's breach of contract claim.
 {¶ 63} The third assignment of error is overruled. *Page 19 
 IV. {¶ 64} Appellant next argues there were genuine issues of material fact as to whether he was obligated to return any consideration he received from the appellee Board before bringing these causes of action, and whether appellee made misrepresentations to him to induce him to enter into the agreement.
 {¶ 65} Appellant cites us to Haller v. Borror Corporation (1990),50 Ohio St. 3d 10, as authority for the proposition a release procured through fraud in the inducement or under duress is voidable. TheHaller court found a voidable release can be contested only after the plaintiff has returned or offered to return the consideration he or she received.
 {¶ 66} Appellant argues he was not required to return the salary and benefits he had received because he was entitled to receive them under his employment contract.
 {¶ 67} The trial court found, and we agree, appellant had failed to show any misrepresentations were made. The court also found appellant received his salary and benefits as consideration for executing the release.
 {¶ 68} We find the trial court did not err in granting summary judgment in favor of the appellees on appellant's fraud in the inducement claim. Accordingly, the fourth assignment of error is overruled.
 V. {¶ 69} In his fifth assignment of error, appellant argues the court should not have granted summary judgment in favor of appellees on his causes of action for libel and slander. *Page 20 
 {¶ 70} To establish a defamation claim, a plaintiff must demonstrate the existence of a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business,Matalka v. Lagemann (1985), 21 Ohio App. 3d 134, 486 N.E.2d 1220.
 {¶ 71} Appellant again argues Piar made statements to potential employers that he was unfit for employment, but Piar testified in her deposition she only used the language previously agreed upon in the agreement and the amended agreement. The trial court found appellant had not produced evidence to the contrary, see III, supra.
 {¶ 72} The trial court also discussed whether appellees could raise the defense of qualified privilege. The court cited Hahn v. Cotton
(1975), 43 Ohio St. 2d 237, which held where the publisher of a statement and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further the common interest, qualified privilege applies. The court found remarks made by the superintendent pursuant to a duty to provide a good education for children in the school district are made in furtherance of a common interest, Opinion at 15, citing Lakota Local School District Board ofEducation v. Brickner (1996), 108 Ohio App. 3d 637.
 {¶ 73} The trial court concluded appellant could only overcome the qualified privilege by demonstrating by clear and convincing evidence Piar made defamatory statements with actual malice, Id, at 347. Actual malice is defined as acting with knowledge the statements are false or with reckless disregard of the truth or falsity of the statements, Id. at 649. The court found there was no evidence appellee Piar *Page 21 
communicated any inappropriate information to potential employers, much less that she acted with actual malice. Our review of the record leads us to agree.
 {¶ 74} Appellant also alleged Piar made statements in a letter from Piar to appellant at the February 14, 2005 meeting, accusing him of insubordination; present and continued failure to follow the Board's policies, rules, and regulations; misuse and/or misappropriation of school district funds; present and continued inappropriate treatment and verbal abuse of subordinate employees; present and continued misuse and abuse of the Board's property; misappropriation and theft of the Board's property; willful and persistent violations of the Board's rules, regulations, and policies; present and continued misfeasance, malfeasance, nonfeasance; and present and continued harassment. Appellees argue all the statements were subject to privilege and could not form the basis of a defamation claim, because Piar had a duty to inform appellant and the Board why she intended to recommend the Board terminate appellant's contract.
 {¶ 75} The trial court found appellant conceded ordinarily these statements would be subject to a qualified privilege, but appellant asserts Piar knew the allegations were false at the time she made them. The court disagreed, finding Piar had a sufficient evidentiary basis to believe all the allegations contained in the letter were true. We have reviewed the record and find no evidence Piar knew or should have known any of the allegations were untrue. The trial court concluded, and we agree, the statements in the letter are privileged, and the appellees are not liable on appellant's defamation claim.
 {¶ 76} The fifth assignment of error is overruled. *Page 22 
 VI. {¶ 77} In his sixth assignment of error, appellant argues the court should not have granted summary judgment in favor of appellees on his cause of action for tortious interference with business expectancies because the within presented genuine issues of material fact.
 {¶ 78} The trial court correctly set out the elements of tortious interference with business expectancy: (1) The existence of valid business expectancy; (2) Defendant's knowledge of the expectancy; (3) Defendant's intentional interference with the expectancy; (4) Lack of justification; and (5) Resulting damages, Opinion at 18, citing SonyElectronics, Inc. v. Grass Valley Group, Inc. Hamilton App. Nos. C-010133 and C-010423, 2002-Ohio-1614.
 {¶ 79} The trial court found appellant had not set forth genuine issues of material fact regarding whether he had any business expectancy. Appellant asserts he was entitled by law to have his contract with the Board renewed, and he also sent out numerous job applications, but was not hired. The court found appellant did not produce evidence that but for the alleged interference he would have been hired by some employer. The court had previously found appellant had not produced any evidence Piar made statements to potential employers that would interfere with his business expectancies, see supra, III, and V.
 {¶ 80} We agree with the trial court appellant did not produce evidence appellees interfered with his contract expectancies with Northridge Schools, or interfered with his ability to secure other employment. Accordingly, the sixth assignment of error is overruled. *Page 23 
 VII. {¶ 81} In his seventh assignment of error, appellant argues there were genuine issues of material fact as to whether appellees maliciously intended to orchestrate the termination of his employment, defame him, and cause him to be subjected to a criminal investigation and public ridicule.
 {¶ 82} To prevail on a claim for intentional infliction of emotional distress appellant had to produce evidence that: (1) appellees intended to cause him emotional distress; (2) appellees' conduct was so extreme and outrageous as to exceed all bounds of decency and be utterly intolerable in a civilized society; (3) appellees' conduct was the proximate cause of appellant's psychic injuries; and (4) appellant's mental anguish was such that no reasonable person could be expected to endure it, Ashcroft v. Mount Sinai Medical Center (1990),68 Ohio App. 3d 359, 588 N.E. 2d 280.
 {¶ 83} The trial court listed the allegations on which appellant based his claim for intentional infliction of emotional distress: (1) appellees caused appellant to be escorted from the building by uniformed police officers; (2) appellees caused a criminal investigation against appellant; (3) appellees made allegations of insubordination and other grounds for termination; (4) appellees canceled appellant's wife's previously scheduled substitute teaching assignments; (5) appellees prevented his daughter from acting as an office aide for appellee Pollock; (6) appellees failed to return appellant's personal effects; (7) appellees released statements to the media regarding his employment and resignation; and (8) appellees released statements about his employment to potential employers. *Page 24 
 {¶ 84} The trial court found, given its discussion of some of the above allegations in the context of appellant's other causes of action, it could not find individually or collectively the allegations exceed all bounds of decency and are utterly intolerable in a civilized society. We agree with the trial court appellant has not raised genuine issues of material fact regarding whether appellees intentionally and tortuously inflicted serious emotional harm on appellant.
 {¶ 85} The seventh assignment of error is overruled.
 VIII. {¶ 86} In his eighth assignment of error, appellant argues the trial court should not have granted summary judgment in favor of appellees on his cause of action for civil conspiracy because, he claims, there are genuine issues of material fact as to whether appellees maliciously combined to orchestrate the termination of his employment, defame him, and cause him to be subject to a criminal investigation and public ridicule.
 {¶ 87} In Williams v. Aetna Finance Company (1998),83 Ohio St. 3d 464, 700 N.E. 2d 859, the Ohio Supreme Court defined the tort of civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages," Williams at 475, citations deleted. The court noted an underlying unlawful act is required before a civil conspiracy claim will succeed, Id.
 {¶ 88} Appellant concedes all the individual appellees presented affidavits denying a conspiracy, and he produced no direct evidence to the contrary. He asserts he did produce evidence appellees were aware he was entitled to a contract extension, had fabricated reports accusing him of wrongdoing, defamed him, and threatened him *Page 25 
with criminal charges, resulting in his damages. Because we find the trial court did not err in rejecting this argument in the context of his other causes of action, we find the trial court did not err in finding appellant had not produced any evidence to show any genuine issues of material fact regarding a conspiracy among the appellees.
 {¶ 89} The eighth assignment of error is overruled.
 IX {¶ 90} In his ninth assignment of error, appellant argues the court should not have granted summary judgment in favor of appellees on their counterclaim against him for breach of contract. The trial court found the release provision in the agreement and amended agreement barred all the claims appellant had asserted in this action. Appellant argues he did not breach the agreement or amendment by commencing this action because he was fraudulently induced into signing the agreement, and it is not enforceable against him.
 {¶ 91} The trial court found the agreement between the parties is valid and enforcible and appellees did not breach the agreement. The court found the release provision in the agreements bars all claims arising out of appellant's employment or resignation, and appellant breached the agreement by bringing suit. We agree.
 {¶ 92} The ninth assignment of error is overruled.
 X. {¶ 93} In his tenth assignment of error, appellant argues the court should not have rendered a monetary judgment in favor of appellees. The trial court ordered appellant to pay appellees the sum of $41,525.25, of which $36,800.66 represents the *Page 26 
salary and benefits appellant received in consideration of the agreement and amended agreement, and $4,724.59 pre-judgment interest.
 {¶ 94} Appellant argues the only evidence appellees presented was the affidavit of superintendent Piar which stated appellant was paid his regular salary and benefits, including retirement, from February 15, 2005, until July 31, 2005, with the exception of the last pay check. Appellees paid appellant's insurance. Piar's affidavit stated the total amount of salary and benefits was $36,800.66, and none of the money was returned.
 {¶ 95} Appellant once again argues he was entitled to the money he received regardless of whether he executed the agreement and amended agreement, which we have already rejected, supra. The trial court found, and we agree, the salary and benefits paid to appellant after February 15, 2005, were in consideration for the agreement. When appellant breached the agreement by bringing the within suit, he was no longer entitled to retain the consideration.
 {¶ 96} The tenth assignment of error is overruled. *Page 27 
 {¶ 97} For the foregoing reasons, Licking County, Ohio, is affirmed.
Gwin, J., Hoffman, P.J., and Edwards, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed. Costs to appellant. *Page 1