OPINION
 I. Facts/ Procedural Posture {¶ 1} Plaintiff-appellant, Jonathon Klaus (hereinafter "Klaus"), appeals the Allen County Court of Common Pleas grant of summary judgment in favor of defendant-appellee, United Equity, Inc. (hereinafter "United"). For reasons that follow, we reverse.
 {¶ 2} Around 1983, the Delphos Equity Elevator Company and the Spencerville Farmers' Union merged into one corporation called United Equity. (Knippen Depo. at 11-12). United's Spencerville facility grinds, mixes, loads, and packages grain products and feed. (Haehn Depo. at 7). In order to accomplish these tasks, United uses various pieces of mechanical equipment, including various augers, which move and grind grain. United has five employees at its Spencerville facility: Cory Haehn, general manager/supervisor; Jacqueline *Page 3 
Knippen, general manager/bookkeeper; Allen McMichael, laborer/truck driver; Phillip O'Neill and Jonathon Klaus, laborers. (Haehn Depo. at 33).
 {¶ 3} In April 2005, United hired Klaus as a general laborer at the Spencerville grain facility. (Klaus Depo. at 52). Klaus was trained by his fellow employees, McMichael and O'Neill, to grind, mix, load, and package grain. (Id. at 38-40). Occasionally, equipment at the Spencerville facility would need repairs. Klaus helped his fellow employees with the repairs and on occasion would make some small repairs himself. (Id.; Id at 53-56)
 {¶ 4} As a part of United's operational safety plan, it implemented a written lock-out/tag-out (LO/TO) procedure for repairing power equipment. However, Klaus never received LO/TO training nor is it clear he ever received a written LO/TO policy when he began his employment. (Klaus Depo. at 66); (O'Neill Depo. at 47). United's employees and management did not follow or enforce the written LO/TO policy; rather, each employee developed their own safety "rules of thumb." (Haehn Depo. at 21); (O'Neill Depo. at 17, 22, 31); (McMichael Depo. at 30-32). Haehn removed fuses from the electrical boxes before repairing equipment, while others, like Klaus and O'Neill, simply turned off the power switch or made sure someone else had turned off the power. (Klaus Depo. at 59); (Haehn Depo. at 21).
 {¶ 5} On February 13, 2006, Klaus was informed that two shear bolts on a grinding auger needed to be replaced. Klaus had replaced these shear bolts three *Page 4 
or four times prior and proceeded to make the repairs this time as well. (Klaus Depo. at 62). The shear bolts that needed to be replaced were located in the section of the auger located on the facility's third floor. (McMichael Depo. at 27-28). The power source for the auger is located on the facility's first floor. (O'Neill Depo. at 26). The person on the third floor cannot see the first floor power source while repairing the auger and there is no communication device for employees to use while making the repair. (Klaus Depo. at 59); (O'Neill Depo. at 45); (Rauck Aff at ¶ 14).
 {¶ 6} Klaus found a shear bolt to make the repair. Klaus told O'Neill to turn off the power to the auger and keep an eye on the power switch. (Klaus Depo. at 64). Klaus went to the man-pull lift and ascended to the third floor. Klaus began making the repairs. McMichael came into the facility and asked O'Neill if they "got it." (O'Neill Depo. at 42). O'Neill thought McMichael was asking if Klaus found a shear bolt and said "yes, we got one." (Id.). McMichael thought O'Neill meant that Klaus was finished repairing the auger, and McMichael activated the power. (Id.); (McMichael Depo. at 36). Klaus was not finished repairing the auger and, when the power was activated, his hand was amputated. (McMichael Depo. at 45-46).
 {¶ 7} On July 12, 2006, Klaus filed a complaint against United alleging an intentional tort as a result of the injuries he sustained. On September 8, 2006, United filed its answer. On June 1, 2007, United filed a motion for summary *Page 5 
judgment. On July 23, 2007, the trial court granted United's motion. On September 10, 2007, the trial court entered its judgment entry dismissing the complaint.
 {¶ 8} On September 14, 2007, Klaus appealed to this Court asserting four assignments of error.
 II. Standard of Review {¶ 9} We review a decision to grant summary judgment de novo. Doe v.Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citingGrafton v. Ohio Edison (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is proper where: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C);Grafton, 77 Ohio St.3d at 105, citing State ex rel. Cassels v. DaytonCity School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 219,631 N.E.2d 150.
 {¶ 10} Material facts are those facts "that might affect the outcome of the suit under the governing law." Turner v. Turner (1993),67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present `a sufficient disagreement to *Page 6 
require submission to a jury' or is it `so one-sided that one party must prevail as a matter of law[?]'" Id., citing Liberty Lobby, Inc.,477 U.S. at 251-52.
 {¶ 11} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. Perez v. Scripts-HowardBroadcasting Co. (1988), 35 Ohio St.3d 215, 217, 520 N.E.2d 198. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." Lakota Loc. SchoolsDist. Bd. of Edn. v. Brickner (1996), 108 Ohio App.3d 637, 643,671 N.E.2d 578.
 III. Analysis ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED WHEN IT MISAPPLIED CIV.R. 56(C) BECAUSE IT FAILED TO CONSTRUE ALL THE EVIDENCE IN FAVOR OF THE NONMOVING PARTY.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO CIV.R. 56 BY FINDING THAT PLAINTIFF DID NOT DEMONSTRATE AN ISSUE OF FACT THAT HIS INJURY WAS SUBSTANTIALLY CERTAIN TO OCCUR.
 {¶ 12} Since assignments of error one and two raise similar issues surrounding the trial court's application of Civ.R. 56(C), we will combine them for analysis.
 {¶ 13} In support of his first assignment of error, Klaus alleges the trial court failed to consider that he never received any LO/TO training and failed to *Page 7 
consider Albert C. Rauck's expert opinions. Furthermore, Klaus argues that the trial court inappropriately made findings of fact to render its opinion.
 {¶ 14} United argues that the trial court did consider the fact that Klaus was not trained but found this fails as a matter of law to establish that his injury was substantially certain to occur. Furthermore, United asserts that the trial court did not ignore Rauck's expert opinion and, even if it did, the trial court was entitled to exclude it as merely conclusory.
 {¶ 15} In support of his second assignment of error, Klaus argues that material issues of fact remain as to whether Klaus's injury was substantially certain to occur. Specifically, Klaus argues that United's failure to provide tag-out tags for down equipment, United's failure to train Klaus on LO/TO procedure, and United's decision not to enforce its LO/TO policy because of management's disagreement with the policy creates issues of fact from which a jury could find that his injury was substantially certain to occur. We agree.
 {¶ 16} Effective April 7, 2005, R.C. 2745.01 provides, in pertinent part:
 In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
 As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death. *Page 8 
 {¶ 17} To establish an employer-employee intentional tort, plaintiff must show: (1) the employer has knowledge of a dangerous process, procedure, instrumentality or condition within its business operation; (2) the employer knows that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Wehri v. Countrymark (1992), 82 Ohio App.3d 535, 537,612 N.E.2d 791, citing Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus;Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus. These elements are collectively referred to as the Fyffe elements.
 {¶ 18} In its judgment entry, the trial court found that Klaus demonstrated material facts sufficient to satisfy Fyffe element one, but he failed to demonstrate material facts sufficient to satisfyFyffe element two's substantial certainty requirement. We disagree.
 {¶ 19} Several questions of fact remain that could convince a juror on the element of substantial certainty. First, Klaus raised an issue of fact concerning whether or not United's management made a conscious decision not to follow its own written LO/TO policy. Jacqueline Knippen, one of United's general *Page 9 
managers, testified that the previous manager, Floyd Sisinger, stopped using safety consultants because "basically, [he] didn't feel they were worth the money spent for them." (Knippen Depo. at 16-17). Furthermore, she testified that Sisinger felt that the operations safety plan was "useless," and he failed to enforce the safety plan beginning in the early 1990's. (Id. at 17-18).
 {¶ 20} This case is similar to the facts of Dailey v. Eaton Corp.
(2000), 138 Ohio App.3d 575, 741 N.E.2d 946 wherein we found that an employer's intentional disregard for safety policies was relevant in showing that the employer had knowledge that an injury was substantially certain to occur. Like Dailey, there is evidence in the record here from which a rational trier of fact could find that United consciously disregarded its LO/TO policy, creating a substantial certainty that an employee injury would result.
 {¶ 21} The trial court below incorrectly relied upon the fact that no evidence existed in the record to suggest that United told Klausnot to follow the turn-off policy. Although this may be true, there was evidence to show that United had a history of failing to follow safety protocols and failed to provide Klaus with LO/TO training. (Haehn Depo. at 26; Knippen Depo. at 24). These material facts, if believed, could convince a jury that Klaus' injury was substantially certain to occur.
 {¶ 22} Second, Klaus raised an issue of fact regarding whether United had implemented a "rule-of-thumb" safety policy. Although United argued that it had *Page 10 
implemented a "rule-of-thumb" safety policy of disconnecting the machinery's power source, the evidence was conflicting on this issue. O'Neill and McMichael simply turned off the power switch; Klaus turned off the power switch or made sure someone else had turned it off; Haehn, United's general manager/supervisor, on the other hand, removed the fuses and placed them in his pocket. (O'Neill Depo. at 27-30); (McMichael Depo. at 29-30); (Klaus Depo. at 64-66); (Haehn Depo. at 19, 22). Given the different safety methods used by various United employees, it is reasonable to question whether any "rule-of-thumb" policy even existed.
 {¶ 23} This issue of fact is material to finding whether the injury was substantially certain to occur. If a "rule-of-thumb" policy was in place and Klaus failed to follow it, then a jury might conclude that his injury was not substantially certain to occur. On the other hand, the jury might well decide that United failed to have any safety policy, written or otherwise, and that could lead the jury to find that the injury was substantially certain to occur.
 {¶ 24} Third, the trial court inappropriately weighed the fact that no other person was injured during the company's last twenty-three years. Although an absence of prior accidents suggests that an injury was not substantially certain to occur, a lack of prior accidents is not necessarily fatal to a plaintiff's case. Taulbee v. Adience, Inc., BMIDiv. (1997), 120 Ohio App.3d 11, 20, 696, 625, *Page 11 
citing Cook v. Cleveland Elec. Illum. Co. (1995), 102 Ohio App.3d 417,429-30, 657 N.E.2d 356.
 {¶ 25} In this case, the evidence demonstrated that no United employee was injured over the past twenty-three years. That fact viewed in isolation supports the trial court's finding that Klaus' injury was not substantially certain to occur; however, when viewed in its context, this fact is less persuasive. The particular repair job that Klaus conducted when he was injured was only done once every three to four months. (McMichael Depo. at 29). Thus, at most, this particular repair job was done only ninety-two (92) times over the past twenty-three years. When viewed in the appropriate context, the reason that no employee has been injured while repairing the auger at United appears to be because this repair was so infrequent, not because United's safety policies were working. We, therefore, are not persuaded that the lack of prior accidents renders summary judgment appropriate here.
 {¶ 26} Weighing the evidence in Klaus' favor as the non-moving party, we find that material questions of fact preclude summary judgment in this case.
 {¶ 27} Klaus' first and second assignments of error are, therefore, sustained. *Page 12 
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT ERRED IN FAILING TO ADDRESS THE ISSUE OF WHETHER R.C. 2745.01 IS AN AFFIRMATIVE DEFENSE WHICH MUST BE RAISED BY UNITED OR ITS DEFENSE IS WAIVED.
 ASSIGNMENT OF ERROR NO. IV THE TRIAL COURT ERRED IN FAILING TO APPLY THE REDUCED STANDARD OF "SUBSTANTIAL CERTAINTY" ENACTED IN R.C. 2745.01 [SIC] MOST RECENT AMENDMENT.
 {¶ 28} Since we have determined that summary judgment was inappropriate for the reasons stated in Klaus' first and second assignments of error, we need not address assignments of error three and four as they have now become moot.
 IV. Conclusion {¶ 29} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment Reversed; Cause Remanded.
 SHAW, P.J., and WILLAMOWSKI, J., concur. *Page 1