[Cite as *Klaus v. United Equity, Inc.*, 2010-Ohio-3549.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

JONATHON KLAUS,                                        CASE NO. 1-07-63

   PLAINTIFF-APPELLANT,

   v.

UNITED EQUITY, INC.,                                   **O P I N I O N**

   DEFENDANT-APPELLEE.

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV2006 0696**

**Judgment Affirmed**

**Date of Decision:  August 2, 2010**

APPEARANCES:

   *Victoria U. Maisch,* **for Appellant**

   *Elizabeth A. Harvey,* **for Appellee**

**PRESTON, J.**

## I.  Facts/ Procedural Posture

{¶1}   Plaintiff-appellant, Jonathon Klaus (hereinafter "Klaus"), appeals the Allen County Court of Common Pleas' grant of summary judgment in favor of his former employer, defendant-appellee, United Equity, Inc. (hereinafter "United") on his claim for an employer intentional tort for injuries he sustained while working.  For the reasons that follow, we affirm.

{¶2}   Around 1983, the Delphos Equity Elevator Company and The Spencerville Farmers' Union merged into one corporation called United Equity. (Knippen Depo. at 11-12).  United's Spencerville facility grinds, mixes, loads, and packages grain products and feed. (Haehn Depo. at 7).  In order to accomplish these tasks, United uses various pieces of mechanical equipment, including various augers, which move and grind grain.  At the time of Klaus' injury, United had five (5) employees at its Spencerville facility: Cory Haehn, general manager/supervisor; Jacqueline Knippen, general manager/bookkeeper; Allen McMichael, laborer/truck driver; and Phillip O'Neill and Jonathon Klaus, laborers. (Haehn Depo. at 33).

{¶3}   United hired Klaus as a general laborer at the Spencerville grain facility in April 2005. (Klaus Depo. at 52).  Klaus was trained by his fellow employees, McMichael and O'Neill, to grind, mix, load, and package grain. (Id. at

38-40). Occasionally, equipment at the Spencerville facility would need repairs. Klaus helped his fellow employees with the repairs and, on occasion, would make some small repairs himself. (Id.; Id at 53-56)

{¶4} As a part of its operational safety plan, United implemented a written lock-out/tag-out (hereinafter "LO/TO") procedure for repairing power equipment. Klaus, however, never received LO/TO training nor is it clear whether he ever received a written LO/TO policy when he began his employment. (Klaus Depo. at 66); (O'Neill Depo. at 47). United's employees and management did not follow or enforce the written LO/TO policy; rather, each employee developed their own safety "rules of thumb." (Haehn Depo. at 21); (O'Neill Depo. at 17, 22, 31); (McMichael Depo. at 30-32). Haehn removed fuses from electrical boxes before repairing equipment, while others, like Klaus and O'Neill, simply turned off the equipment's power switch or made sure someone else had turned it off. (Klaus Depo. at 59); (Haehn Depo. at 21).

{¶5} On February 13, 2006, Klaus was informed that two (2) shear bolts on a grinding auger needed to be replaced. Klaus had replaced these shear bolts three or four (3 or 4) times prior and proceeded to make the repairs this time as well. (Klaus Depo. at 62). The shear bolts that needed to be replaced were located in the section of the auger located on the facility's third floor. (McMichael Depo. at 27-28). The power source for the auger is located on the facility's first floor. (O'Neill Depo. at 26). The person on the third floor cannot see the first floor

power source while repairing the auger, and there is no communication device for employees to use while making the repair. (Klaus Depo. at 59); (O'Neill Depo. at 45); (Rauck Aff. at ¶14).

{¶6} Klaus found a shear bolt to make the repair. Klaus then told O'Neill to turn off the power to the auger and keep an eye on the power switch. (Klaus Depo. at 64). Klaus went to the man-pull lift and ascended to the third floor. At some point after Klaus began making the repairs, McMichael came into the facility and asked O'Neill if they had "got it." (O'Neill Depo. at 42). O'Neill thought McMichael was asking if Klaus had found a shear bolt and remembered saying, "yes, we got one." (Id.). McMichael, on the other hand, thought O'Neill meant that Klaus was finished repairing the auger, and so McMichael activated the power to the auger. (Id.); (McMichael Depo. at 36). Klaus, however, was not finished repairing the auger, and his hand was amputated when McMichael activated the power. (McMichael Depo. at 45-46).

{¶7} On July 12, 2006, Klaus filed a complaint against United alleging an employer intentional tort as a result of the injuries he sustained. (Doc. No. 1). On September 8, 2006, United filed its answer. (Doc. No. 5). On June 1, 2007, United filed a motion for summary judgment. (Doc. No. 23). On July 23, 2007, the trial court granted United's motion. (Doc. No. 34). On September 10, 2007, the trial court filed a judgment entry dismissing the complaint. (Doc. No. 40).

{¶8} On September 14, 2007, Klaus appealed to this Court asserting four assignments of error. (Doc. No. 42). On March 24, 2008, we reversed the trial court's grant of summary judgment, finding material issues of fact remained as to whether Klaus's injury was "substantially certain" to occur under *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus. *Klaus v. United Equity*, 3d Dist. No. 1-07-63, 2008-Ohio-1344.

{¶9} On May 12, 2008, United Equity appealed our decision to the Ohio Supreme Court, which accepted the appeal on September 10, 2008.

{¶10} On March 23, 2010, the Ohio Supreme Court reversed our decision and remanded the matter for this Court to "apply" its recent decisions in *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, and *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, neither of which had been decided prior to Klaus' appeal to this Court. *Klaus v. United Equity, Inc.*, 125 Ohio St.3d 279, 2010-Ohio-1014, 927 N.E.2d 1092.

{¶11} The Ohio Supreme Court's notice of remand was filed with this Court on April 8, 2010, and, on April 14, 2010, we ordered the parties to file supplemental briefs in light of *Kaminski* and *Stetter*, supra. The parties have filed their supplemental briefs, and the appeal is now before the Court on remand.

**Standard of Review**

{¶12} We review a decision to grant summary judgment de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citing *Grafton v. Ohio Edison* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is proper where: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *Grafton*, 77 Ohio St.3d at 105, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150.

{¶13} Material facts are those facts "that might affect the outcome of the suit under the governing law." *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" Id., citing *Liberty Lobby, Inc.*, 477 U.S. at 251-52.

{¶14} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." *Lakota Loc.*

*Schools Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 643, 671 N.E.2d 578.

### III. Analysis

A.     The Ohio Supreme Court's Decisions in *Kaminski* & *Stetter*

{¶15} Before reviewing the assignments of error in this appeal, it is necessary to discuss the Ohio Supreme Court's recent decisions in *Kaminski* and *Stetter*. 2010-Ohio-1027; 2010-Ohio-1029.  As the Court noted, the net result of these two decisions was to confirm the constitutionality of R.C. 2745.01, the employer intentional tort statute. *Kaminski*, 2010-Ohio-1027, at ¶2.  That being said, we now turn our attention to the first of these two cases.

{¶16} The Court in *Kaminski* ultimately held that R.C. 2745.01 did not violate Sections 34 or 35 of Article II of the Ohio Constitution. 2010-Ohio-1027, at ¶¶1, 98, 101.  In reaching that conclusion, the Court generally observed that Section 35 and its derivative legislation "were public policy trade-offs" by which the employee achieved "a certain and speedy recovery in exchange for granting a more limited liability to the employer." Id. at ¶17, citing *Van Fossen v. Babock & Wilcox Co.* (1988), 36 Ohio St.3d 100,110, 522 N.E.2d 489.  The Court's analysis began with the history behind the enactment of Section 35, which allowed for the establishment of a state-regulated workers' compensation fund. Id. at ¶¶14-20. The Court first noted that, in 1911 and prior to Section 35's enactment, the legislature passed a statute governing the compensation of industrial injuries,

which contained a "wilful act" exception that allowed injured employees to bring a common-law action against his/her employer in certain situations. Id. at ¶¶16, 18. This statute, however, did not define the term "wilful act," and, due to "considerable legal activity against employers," the legislature amended the statute in 1914 to define "wilful act" as an act done "knowingly and purposely with the direct object of injuring another." Id. at ¶18, citing *Van Fossen*, 36 Ohio St.3d at 110; 104 Ohio Laws 194. The Court next observed that, in *Gildersleeve v. Newton Steel Co.* (1924), 109 Ohio St. 341, 142 N.E. 678, it had found that the term "willful act" in the revised statute "* * * imports an act of will and design and of conscious intention to inflict injury upon some person. Gross negligence or wantonness can no longer be a willful act under this section * * *." Id. at ¶18. The Court further noted that, in 1924, Section 35 was amended to provide: "[s]uch compensation shall be in lieu of all other rights to compensation," and that employers who comply with workers' compensation laws "shall not be liable to respond in damages at common law or by statute." Id. at ¶19. "[T]his provision was widely believed to grant immunity to complying employers 'from *any* common-law actions for injuries suffered by employees in the workplace,'" according to the Court. Id., citing *Van Fossen*, 36 Ohio St.3d at 111 (emphasis sic). The Court in *Kaminski* further observed that, following its decision in *Triff v. Natl. Bronze & Aluminum Foundry Co.* (1939), 135 Ohio St. 191, 20 N.E.2d 232 that an employee could file suit, despite Section 35, for an injury that resulted

from a non-compensable occupational disease, the General Assembly "immediately amended the workers' compensation laws to restore the exclusivity of remedy." Id. at ¶20, citing *Van Fossen*, 36 Ohio St.3d at 111.

{¶17} The Court in *Kaminski* then acknowledged that, despite the legislative efforts to limit an injured worker's recovery to that provided within the workers' compensation system, it "devised" an exception in *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 433 N.E.2d 572. Id. at ¶21. *Blankenship*'s syllabus held that "[a]n employee is not precluded by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 * * * from enforcing his common law remedies against his employer for an intentional tort." Id. Thereafter, in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 95, 472 N.E.2d 1046, the Court relied upon *Blankenship* and rejected the proposition that an employer's "specific intent to injure is necessary to a finding of intentional misconduct." Id. at ¶25. The Court in *Jones* held that: "[a]n intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Id. After *Blankenship* and *Jones*, the legislature enacted former R.C. 4121.80 (eff. 8/22/86), which defined "substantially certain" as requiring that an employer act "with deliberate intent to cause an employee to suffer injury, disease, condition, or death." Id. at ¶27, citing 141 Ohio Laws, Part I, 733, 736. In the meantime, the Ohio Supreme Court in *Van Fossen* clarified the standards set forth in *Jones* for a common-law, employer

intentional tort. Id. at ¶28, citing (1988), 36 Ohio St. at 115. The standards in *Van Fossen* were subsequently modified in *Fyffe* (1991), 59 Ohio St.3d 115, wherein the Court held that:

> **\* \* \* in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.**

Id. at ¶¶29-30. *Fyffe*'s common-law test applied for employer intentional torts until April 7, 2005, the effective date of R.C. 2745.01, which was at issue in *Kaminski*. Id. at ¶33. The Court in *Kaminski* then noted that, in *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, it had found former R.C. 4121.80, which defined "substantially certain," unconstitutional under Sections 34 and 35, Article II of the Ohio Constitution. Id. at ¶35. After *Brady*, the legislature responded yet again and enacted the former version of R.C. 2745.01 (eff. 11/1/95), but the Court, relying upon *Brady*, found this statute also unconstitutional. *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107. *Kaminski* at ¶¶46, 78-80.

{¶18} In light of this history, the Court in *Kaminski* observed that: "the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in

2745.01(B), is to permit recovery for employer intentional torts *only when an employer acts with specific intent to cause an injury*, subject to subsections (C) and (D)." Id. at ¶56 (emphasis added), citing *Talik v. Fed. Marine Terminals, Inc.*, 117 Ohio St.3d 496, 2008-Ohio-937, 885 N.E.2d 204, ¶17 (the General Assembly in R.C. 2745.01 "modified the common-law definition of an employer intentional tort" by rejecting "the notion that acting with a belief that injury is substantially certain to occur is analogous to wanton misconduct").  The Court also noted that:

> **{¶ 99} R.C. 2745.01 by no means places Ohio outside the national mainstream relative to employer intentional torts and the exclusivity of the workers' compensation remedy. Rather, R.C. 2745.01 appears to harmonize the law of this state with the law that governs a clear majority of jurisdictions.**
>
> **{¶ 100} "[T]he common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury." * * * Furthermore, "Ohio is one of only eight states that have judicially adopted a 'substantial certainty' standard for employer intentional torts." (Footnote omitted.) *Talik,* 117 Ohio St.3d 496, 2008-Ohio-937, 885 N.E.2d 204, ¶ 32, citing 6 Larson's Workers' Compensation Law (2007) 103-10, Section 103.04[1].**

Id. at ¶¶99-100.  The Court in *Kaminski* ultimately upheld R.C. 2745.01, finding that it was not in conflict with Sections 34 or 35 of Article II of the Ohio Constitution. Id. at ¶101.  In reaching this decision, the Court also limited its previous holding in *Johnson* to former R.C. 2745.01 (eff. 11/1/95). Id. at ¶¶1, 97.

**{¶19}** After concluding that R.C. 2745.01 was constitutional, the Court applied the statute to the record before it and concluded that the employer was entitled to summary judgment because "nothing in the record demonstrate[ed] that Kaminski can prove that her employer committed a tortious act with the intent to injure her or that the employer acted with deliberate intent to cause her to suffer an injury for purposes of R.C. 2745.01(A) and (B)." Id. at ¶104.

**{¶20}** *Stetter v. R.J. Corman Derailment Servs., L.L.C.* was before the Ohio Supreme Court upon certified questions of state law from the Federal District Court for the Northern District of Ohio, Western Division, regarding the constitutionality of R.C. 2745.01. 2010-Ohio-1029, ¶1. The Court was presented with the following eight (8) certified questions:

> **"1. Is R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, unconstitutional for violating the right to trial by jury?**
>
> **"2. Is R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, unconstitutional for violating the right to a remedy?**
>
> **"3. Is R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, unconstitutional for violating the right to an open court?**
>
> **"4. Is R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, unconstitutional for violating the right to due process of law?**
>
> **"5. Is R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, unconstitutional for violating the right to equal protection of the law?**

**"6. Is R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, unconstitutional for violating the separation of powers?**

**"7. Is R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, unconstitutional for conflicting with the legislative authority granted to the General Assembly by § 34 and § 35, Article II, of the Ohio Constitution?**

**"8. Does R.C. § 2745.01, as enacted by House Bill 498, effective April 7, 2005, do away with the common law cause of action for employer intentional tort?"**

Id. at ¶¶7-14. The Court answered all the certified questions in the negative and found R.C. 2745.01 to be constitutional. Id. at ¶¶94-97.

{¶21} Relevant to this appeal, the Court in *Stetter*, answering certified question number eight (8) in the negative, stated:

> **{¶ 23} In an argument going to the eighth certified question, petitioners assert that R.C. 2745.01 "*does not do away with* the common law cause of action for employer intentional tort." (Emphasis added.) Rather than arguing that R.C. 2745.01 is unconstitutional, petitioners present an elaborate argument that R.C. 2745.01 is actually constitutional when understood in its proper context.**
>
> **{¶ 24} Petitioners first contend that the portion of R.C. 2745.01(A) regarding the employer's intent to injure another is actually a codification of the common-law cause of action developed by this court, in such cases as *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. Petitioners then assert that R.C. 2745.01(A) both acknowledges the existing common-law action for employer intentional torts and creates "a new statutory cause of action for *deliberately intended* employer intentional torts." (Emphasis sic.)**

**{¶ 25}** Petitioners accordingly contend that the General Assembly meant to accept this court's holdings in *Brady* and *Johnson*.

**{¶ 26}** For reasons also discussed in *Kaminski,* we reject petitioners' construction of R.C. 2745.01. It was the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), to permit recovery for employer intentional torts *only* when an employer acts with specific intent to cause an injury. See id., --- Ohio St.3d ----, 2010-Ohio-1027, --- N.E.2d ----, at ¶ 56.

**{¶ 27}** To accept petitioners' view of the statute, we must ignore the history of employer intentional-tort law in Ohio and the dynamic between the General Assembly's attempts to legislate in this area and this court's decisions reacting to those attempts. Instead, we find that R.C. 2745.01 embodies the General Assembly's intent to significantly curtail an employee's access to common-law damages for what we will call a "substantially certain" employer intentional tort. We do not view the statute as a codification of this court's decisions in *Brady,* 61 Ohio St.3d 624, 576 N.E.2d 722, and *Johnson,* 85 Ohio St.3d 298, 707 N.E.2d 1107.

2010-Ohio-1029, at ¶¶23-27. Also relevant to the appeal sub judice, the Court in *Stetter* emphasized throughout its opinion that, by enacting R.C. 2745.01, the legislature permissibly *modified* the common-law of employer intentional torts. Id. at ¶¶36, 52-53, 60, 64-65, 84, 94.

B.    Klaus' Assignments of Error

**{¶22}** We now apply the Court's decisions in *Kaminski* and *Stetter* to Klaus' assignments of error. For clarity, we elect to address his assignments of error out of the order they appear in his brief.

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED IN FAILING TO ADDRESS THE ISSUE OF WHETHER R.C. 2745.01 IS AN AFFIRMATIVE DEFENSE WHICH MUST BE RAISED BY UNITED OR ITS DEFENSE IS WAIVED.**

{¶23} In his third assignment of error, Klaus argues that R.C. 2745.01 is an affirmative defense, which United has waived by failing to raise the statute's applicability in its answer. We disagree.

{¶24} As an initial matter, United did not specifically assert R.C. 2745.01 as an affirmative defense in its answer; however, United did assert the protection of Ohio's Workers' Compensation laws. (Answer, Doc. No. 5); *Schroerluke v. AAP St. Mary's Corp.* (Feb. 16, 1996), 3d Dist. No. 2-95-27, at \*2, citing *Hamilton v. East Ohio Gas Co.* (1973), 47 Ohio App.2d 55, 351 N.E.2d 775 (R.C. 4123.74 is an affirmative defense). Therefore, United has preserved any defenses it may have relative to the Ohio Workers' Compensation laws. We now consider whether R.C. 2745.01 is an affirmative defense and whether or not United has waived this defense by failing to assert it in its answer.

{¶25} An affirmative defense is "a new matter which, assuming the complaint to be true, constitutes a defense to it * * * [and] 'any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the "confession") but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the "avoidance").'" *Baraby v. Swords*, 166 Ohio App.3d 527, 2006-Ohio-1993, 851 N.E.2d 559, ¶34, quoting *Eulrich v. Weaver Bros., Inc.*,

165 Ohio App.3d 313, 2005-Ohio-5891, 846 N.E.2d 542, ¶15, quoting *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 33, 661 N.E.2d 187. "Affirmative defenses must be set forth in a responsive pleading, through a Civ.R. 12(b) motion, or by an amendment under Civ.R. 15." *Baraby*, 2006-Ohio-1993, at ¶34, citing *Eulrich*, 2005-Ohio-5891, at ¶13.

{¶26} Klaus cites this Court's decision in *Baraby*, supra, in support of his argument that R.C. 2745.01 is an affirmative defense. 2006-Ohio-1993. In *Baraby*, this Court concluded that R.C. 1705.48, affording members and managers of limited liability companies protection against individual liability, was an affirmative defense. 2006-Ohio-1993, at ¶34. The essential and relevant facts of the case are these. Natalia Baraby was a tenant in an apartment owned by Swords Property Management, Ltd., a limited liability company whose members were Lawrence and Carol Swords. Id. at ¶3. Pertinent here, Baraby filed a complaint against Swords Property Management and Lawrence and Carol Swords, personally, after two of her children died as a result of a fire at the apartment. Id. at ¶¶4-5. The trial court granted summary judgment in favor of Lawrence and Carol Swords on Baraby's claims against them personally, finding that Lawrence and Carol had acted in their capacity as members of the limited liability company, Swords Property Management. Id. at ¶33. On appeal, Baraby argued, in part, that the trial court erred in dismissing these claims because Lawrence and Carol never

timely asserted their limited liability as an affirmative defense, and as such, the

defense was waived. Id. This Court agreed, reasoning as follows:

> **Affirmative defenses must be set forth in a responsive pleading, through a Civ.R. 12(b) motion, or by an amendment under Civ.R. 15. See *Eulrich v. Weaver Bros., Inc.,* 165 Ohio App.3d 313, 2005-Ohio-5891, 846 N.E.2d 542, at ¶ 13. In this case, Lawrence and Carol failed to raise the defense provided by R.C. 1705.48 until they filed their motion for summary judgment. * * * By arguing that R.C. 1705.48 protects them from individual liability, Lawrence and Carol essentially admit that Natalia has a claim (the confession), but assert statutory protection as to why she cannot recover from them individually (the avoidance). Because Lawrence and Carol failed to properly raise the affirmative defense, they have waived it.**

Id. at ¶34.

**{¶27}** However, R.C. 1705.48, the statute at issue in *Baraby*, is different

from R.C. 2745.01, the statute at issue here. The former provides, in pertinent

part:

> **(A)  The debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the limited liability company.**
>
> **(B)  Neither the members of the limited liability company nor any managers of the limited liability company are personally liable to satisfy any judgment, decree, or order of a court for, or are personally liable to satisfy in any other manner, a debt, obligation, or liability of the company solely by reason of being a member or manager of the limited liability company.**

R.C. 1705.48(A), (B). The latter provides, in relevant part:

> **(A)  In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the**

> **employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.**
>
> **(B)     As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.**

R.C. 2745.01 (A), (B).  The plain language of R.C. 1705.48 assumes the existence of a valid claim (the "confession") by using the terms "debts," "obligations," and "liabilities," as well as "judgment," "decree," or "order of a court."  The statute, then, provides "the avoidance" by specifically exempting members and managers of limited liability companies from personal liability on these assumed, valid claims against the limited liability company.  As such, the statute provides an affirmative defense, by definition, as we found in *Baraby*. 2006-Ohio-1993, at ¶34.  Unlike R.C. 1705.48, the plain language of R.C. 2745.01 does not assume the existence of a valid employer intentional tort claim; rather, the statute "modifie[s] the common-law definition of an employer intentional tort." *Talik*, 2008-Ohio-937, at  ¶17; *Kaminski*, 2010-Ohio-1027, at ¶56, citing *Talik* at ¶17; *Stetter*, 2010-Ohio-1029, at ¶¶36, 52-53, 60, 64-65, 84, 94.  Specifically, R.C. 2745.01 modified the common-law of employer intentional torts that was previously set forth in *Fyffe* by redefining the claim's essential elements. *Kaminski*, 2010-Ohio-1027, at ¶33.  Since R.C. 2745.01 contains no "confession" like R.C. 1705.48, it can not, by definition, constitute an affirmative defense. *Baraby*, 2006-Ohio-1993, at ¶34, quoting *Eulrich*, 2005-Ohio-5891, at ¶15,

quoting *State ex rel. Plain Dealer Publishing Co.*, 75 Ohio St.3d at 33. Furthermore, R.C. 2745.01 places the burden of proof upon the *plaintiff*, unlike an affirmative defense, which places the burden of proof upon the defendant. *MatchMaker Internatl., Inc. v. Long* (1995), 100 Ohio App.3d 406, 408, 654 N.E.2d 161, citing *Dykeman v. Johnson* (1910), 83 Ohio St. 126, 135, 93 N.E. 626 and *Gordon v. Mobile Diagnostic Serv.* (Dec. 7, 1988), 9th Dist. No. 13571, at *7 ("It is well settled in Ohio that the defendant asserting an affirmative defense has the burden of proof in establishing such defense."). For these reasons, we find that R.C. 2745.01 is not an affirmative defense and reject Klaus' argument that United waived this defense by failing to timely assert it.

**{¶28}** Klaus' third assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED IN FAILING TO APPLY THE REDUCED STANDARD OF "SUBSTANTIAL CERTAINTY" ENACTED IN R.C. 2745.01 [SIC] MOST RECENT AMENDMENT.**

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT MISAPPLIED CIV.R. 56(C) BECAUSE IT FAILED TO CONSTRUE ALL THE EVIDENCE IN FAVOR OF THE NONMOVING PARTY.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO CIV.R. 56 BY FINDING THAT PLAINTIFF DID NOT DEMONSTRATE AN ISSUE OF FACT THAT HIS INJURY WAS SUBSTANTIALLY CERTAIN TO OCCUR.**

{¶29} In his fourth assignment of error, Klaus argues that the trial court erred by failing to apply R.C. 2745.01's less stringent standard of "substantial certainty." Klaus argues that R.C. 2745.01's "substantial certainty" requirement is less stringent than *Fyffe*'s because the statute only requires that the employer commit the tortious act with the "*belief* that the injury was substantially certain to occur"; whereas, *Fyffe* required *knowledge* by the employer that an injury was substantially certain to occur.

{¶30} In his first and second assignments of error, Klaus argues that summary judgment was inappropriate since a question of fact exists concerning whether his injury was substantially certain to occur under R.C. 2745.01. Specifically, Klaus argues that United's conscious decisions not to: enforce LO/TO procedures, provide the necessary LO/TO equipment, and train him on LO/TO procedures create a question of fact as to whether United's tortious acts were committed with the *belief* that an injury was substantially certain to occur. Klaus argues that United's conscious decisions distinguish his case from *Kaminski*.

{¶31} As an initial matter, we must reject Klaus' argument in his fourth assignment of error that R.C. 2745.01's "substantial certainty" requirement is *less* stringent than the "substantial certainty" articulated in *Fyffe*. The Court in *Kaminski* observed:

**{¶ 56} * * * we agree with the court of appeals that the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts *only* when an employer acts with specific intent to cause an injury, *subject to subsections (C) and (D).* See *Talik v. Fed. Marine Terminals, Inc.,* 117 Ohio St.3d 496, 2008-Ohio-937, 885 N.E.2d 204, ¶ 17 (the General Assembly in R.C. 2745.01 "modified the common-law definition of an employer intentional tort" by rejecting "the notion that acting with a belief that injury is substantially certain to occur is analogous to wanton misconduct"). * * ***

**{¶ 57} This view is supported by the history of employer intentional-tort litigation in Ohio and by a comparison of the current statute to previous statutory attempts. See, e.g., *Van Fossen*, 36 Ohio St.3d at 108-109, 522 N.E.2d 489, *holding that former R.C. 4121.80(G) (which bore a marked resemblance to current R.C. 2745.01(B)) imposed "a new, more difficult statutory restriction upon" an employee's ability to bring an employer intentional-tort action*; *Johnson*, 85 Ohio St.3d at 310, 707 N.E.2d 1107 (Cook, J., dissenting) ("By enacting [former] R.C. 2745.01, the General Assembly sought to statutorily narrow [the] common-law definition [of employer intentional tort] to 'direct intent' torts only"). Accordingly, our task in this case and in *Stetter* is to determine whether the statute, *insofar as it intends to significantly restrict actions for employer intentional torts*, survives scrutiny under certain provisions of the Ohio Constitution.**

2010-Ohio-1027, at ¶¶56-57 (emphasis added); *Stetter*, 2010-Ohio-1029, at ¶26.

Likewise, the Court in *Stetter* noted "* * * R.C. 2745.01 embodies the General

Assembly's intent to significantly curtail an employee's access to common-law

damages for what we will call a 'substantially certain' employer intentional tort."

2010-Ohio-1029, at ¶27. The Court in *Stetter* further acknowledged that "the

statute significantly limits lawsuits for employer workplace intentional torts." Id.

at ¶28. Likewise, the argument that R.C. 2745.01 was merely a codification of

-21-

*Fyffe*'s "substantial certainty" standard is meritless in light of *Kaminski* and *Stetter*. 2010-Ohio-1027, at ¶¶56, 103; 2010-Ohio-1029, at ¶¶23-27. Therefore, we reject Klaus' argument that the General Assembly created a *less* stringent standard in R.C. 2745.01 than was previously articulated in *Fyffe*.

{¶32} Next, we must determine whether the trial court erred in granting summary judgment in light of R.C. 2745.01. For its part, the trial court's entry, much like our prior opinion, cited the statute but analyzed Klaus' intentional tort claim under *Fyffe*. (Jul. 23, 2007 JE, Doc. No. 34); *Klaus*, 2008-Ohio-1344, at ¶¶16-18. Nevertheless, as this Court has recognized before, "[a] judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." See, e.g., *Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, 922 N.E.2d 272, ¶16, citations omitted. After reviewing the evidence in a light most favorable to Klaus as the nonmovant, we find that the trial court did not err in granting United's motion for summary judgment.

{¶33} "R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts *only* when an employer acts with specific intent to cause an injury, *subject to subsections (C) and (D). Kaminski*, 2010-Ohio-1027, at ¶56 (emphasis added), citing *Talik*, 2008-Ohio-937, at ¶17; *Stetter*, 2010-Ohio-1029, at ¶26 (same). The facts of this case do not implicate R.C. 2745.01(C) or (D). Furthermore, there is nothing in the record demonstrating that

United committed a tortious act with the specific intent to injure Klaus or that United acted with deliberate intent to cause Klaus to suffer an injury for purposes of R.C. 2745.01(A) and (B). Rather, the evidence demonstrates that Klaus' injury was the result of a miscommunication between United's employees—an unfortunate accident, but not an employer intentional tort as defined by the Ohio Supreme Court in *Kaminski* and *Stetter*.

{¶34} Klaus' fourth, first, and second assignments of error are, therefore, overruled.

## IV.  Conclusion

{¶35} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jnc**